(No. 50404. ▮▮▮▮▮▮▮)

JAMES V. HUNT, JR., Adm'r, *et al.*, Appellants, v. ROBERT BLASIUS *et al.*—(Fosco Fabricators, Appellee.)

*Opinion filed Dec. 4, 1978.—Rehearing denied Jan. 25, 1979.*

204

Costigan & Wollrab, of Bloomington (William F. Costigan and James T. Finegan, of counsel), and Rolland H. Stimson, of Chicago, for appellants.

Livingston, Barger, Brandt, Slater & Schroeder, of Bloomington (Thomas M. Barger III, of counsel), for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

This action arose out of an automobile accident on April 30, 1970. Two occupants of a car were killed and three others seriously injured when the car left the paved portion of Interstate Highway 55 near Normal and collided with the post of an exit sign. An action was filed on behalf of the five occupants (plaintiffs) in the circuit court of McLean County against four defendants, three of whom were dismissed. We are concerned here only with defendant Fosco Fabricators (Fosco).

Plaintiffs' amended complaint alleged that Fosco designed, constructed and installed the exit sign post upon specifications required by the State of Illinois. Plaintiffs advanced two theories of recovery: negligence and strict liability. Under both theories, plaintiffs averred that Fosco should be liable because it (1) failed to follow "modern methods of highway construction," (2) failed to make the post of a "break-away" design, (3) used steel and concrete to construct and anchor the post, and (4) installed the post "within three feet of the surface" of the highway.

Fosco filed a motion for summary judgment. In support of its motion, Fosco submitted the affidavit of Alvin Jensen, a district traffic engineer for the State's Department of Transportation. The uncontroverted affidavit established the following: The exit sign, which was 17 feet high and 16 feet wide and bore the legend "Normal-El Paso," was supported by two posts; the posts were constructed of wide-flange steel and embedded in concrete; the combined weight of the posts was 2,325 pounds; the post nearer the highway was approximately five feet from the outer edge of the shoulder of the highway; the sign and supporting posts were designed, constructed and installed by Fosco in strict conformity to specifications mandated by the State of Illinois; and the

work was completed in October 1966 (3½ years prior to the instant accident) and subsequently approved and accepted by the State.

The trial court granted Fosco's motion for summary judgment and entered an order specifically finding that, when the State approved and accepted the work, Fosco, as an independent contractor, was relieved of liability to any third persons in negligence and in strict liability. The appellate court affirmed. It accepted the trial court's rationale on the negligence counts and held that an independent contractor who designs a product according to specifications mandated by a government entity is not liable to third persons in strict liability. (55 Ill. App. 3d 14.) We granted plaintiffs leave to appeal.

Both the trial and appellate courts predicated the dismissal of the negligence count on the general rule that an independent contractor is not liable to third persons for injuries which occurred after the completed work was accepted by, in this case, the State of Illinois. Both courts referred to exceptions which have been engrafted onto the rule, particularly the exception that a contractor may be liable if the work done is "imminently dangerous" to the life or health of third persons. They concluded that the "imminently dangerous" exception applies only to "explosives, poisonous drugs, and the like" and therefore was not applicable to the facts in this case. As a result they applied the general rule of nonliability.

Since its inception in Illinois, the general rule, a corollary of the doctrine of privity of contract, has been applied not only to independent contractors, but to all suppliers of chattel. (*Watts v. Bacon & Van Buskirk* (1959), 18 Ill. 2d 226, 231-32; *Lindroth v. Walgreen Co.* (1950), 407 Ill. 121; *Davidson v. Montgomery Ward & Co.* (1912), 171 Ill. App. 355, 362-64.) Under strict adherence to the general rule, a contractor, manufacturer or vendor

whose negligence caused injury to a third person would not be liable to that person because no contractual relation existed between the parties. To ameliorate this harsh result, Illinois courts gradually broadened the scope of the exceptions to the rule so that tort liability could be imposed on negligent independent contractors and manufacturers. *Colbert v. Holland Furnace Co.* (1928), 333 Ill. 78 (independent contractor); *Paul Harris Furniture Co. v. Morse* (1956), 10 Ill. 2d 28 (independent contractor); *Rotche v. Buick Motor Co.* (1934), 358 Ill. 507 (manufacturer); *Beadles v. Servel Incorporated & Union Gas & Electric Co.* (1951), 344 Ill. App. 133 (manufacturer).

Finally, in the case of *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, this court expressly rejected the general rule of nonliability. The court traced the erosion of the general rule to the persuasive reasoning of Mr. Justice Cardozo in *MacPherson v. Buick Motor Co.* (1916), 217 N.Y. 382 111 N.E. 1050, in which the "imminently dangerous" exception, previously reserved for such products as explosives and poisons, was extended to encompass any product which would, with reasonable certainty, place life and limb in peril *when negligently made*. The court recognized that the extension of the "imminently dangerous" exception made the general rule of nonliability obsolete. The court declared that the "general rule [in Illinois], rather than the exception to a so-called 'general rule', is that a manufacturer may be liable for injuries to a person not in privity with him and that such liability is governed by the same principles governing any action for negligence." *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 616-17.

Although the *Suvada* case specifically involved the liability of a manufacturer, the court declared that the principle applies similarly to all parties, including independent contractors, whose negligence caused injury to persons outside their contractual relations. (*Suvada v.*

*White Motor Co.* (1965), 32 Ill. 2d 612, 617, citing as an example of independent contractor liability *Paul Harris Furniture Co. v. Morse* (1956), 10 Ill. 2d 28.) This conclusion comports with section 404 of the Restatement (Second) of Torts, which section reads:

> "One who as an independent contractor negligently makes, rebuilds, or repairs a chattel for another is subject to the same liability as that imposed upon negligent manufacturers of chattel." (Restatement (Second) of Torts sec. 404 (1965).)

Accord, Prosser, Torts sec. 104, at 680-81 (4th ed. 1971); 41 Am. Jur. 2d *Independent Contractors* sec. 50 (1968).

The general rule of nonliability having been discarded, we must examine the negligence count according to the traditional requirements of such an action. Liability in negligence arises only if the independent contractor has breached a duty owed to persons whose injuries proximately resulted from the breach. In the case at bar, Fosco designed, constructed and installed the exit sign post upon specifications provided by the State of Illinois. It is conceded that Fosco fully complied with the specifications. Plaintiffs, nevertheless, allege that Fosco owed a duty to plaintiffs "to utilize its judgment in the exercise of reasonable care in the construction, design and installation of said exit sign pole." We disagree.

An independent contractor owes no duty to third persons to judge the plans, specifications or instructions which he has merely contracted to follow. If the contractor carefully carries out the specifications provided him, he is justified in relying upon the adequacy of the specifications unless they are so obviously dangerous that no competent contractor would follow them. (Restatement (Second) of Torts sec. 404, Comment a (1965); Prosser, Torts sec. 104, at 681-82 (4th ed. 1971); 41 Am. Jur. 2d *Independent Contractors* sec. 50 (1968).) The rule, as expressed in the oft-cited case of *Ryan v. Feeney &*

*Sheehan Building Co.* (1924), 239 N.Y. 43, 46, 145 N.E. 321, 321-22, is as follows:

> "A builder or contractor is justified in relying upon the plans and specifications which he has contracted to follow, unless they are so apparently defective that an ordinary builder of ordinary prudence would be put upon notice that the work was dangerous and likely to cause injury." (Cited with approval in *Leininger v. Stearns-Roger Manufacturing Co.* (1965), 17 Utah 2d 37, 41-42, 404 P.2d 33, 36; *Davis v. Henderlong Lumber Co.* (N.D. Ind. 1963), 221 F. Supp. 129, 134; *Person v. Cauldwell-Wingate Co.* (2d Cir. 1951), 187 F.2d 832, 835, *cert. denied* (1951), 341 U.S. 936, 95 L. Ed. 544, 71 S. Ct. 855.)

Plaintiffs' complaint fails to allege that the specifications were so flawed that Fosco should have been put on notice that the product would be dangerous and likely to cause injury. It also fails to provide any facts from which a court might infer that the specifications were so glaringly dangerous that Fosco should have refrained from complying with the specifications. We find no basis upon which Fosco can be held liable in negligence for merely complying with the State's contract specifications.

The elements of a cause of action in strict products liability, of course, differ markedly from their counterparts in negligence. To recover in strict liability, the injury must result from a condition of the product, the condition must be unreasonably dangerous and the condition must have existed at the time the product left the manufacturer's control. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 623.) This court has grappled numerous times with the evasive concept of the "unreasonably dangerous condition." In *Dunham v. Vaughan & Bushnell Mfg. Co.* (1969), 42 Ill. 2d 339, 342-43, this court recounted a litany of authorities who have attempted to define the

scope of the concept. The court concluded that the premise common to each is that "those products are defective which are dangerous because they fail to perform in the manner reasonably to be expected in light of their nature and intended function." *Dunham v. Vaughan & Bushnell Mfg. Co.* (1969), 42 Ill. 2d 339, 342.

Plaintiffs allege, quite simply, that the steel and concrete design of the exit sign post was defective because it was not reasonably safe in the event that automobiles left the paved portion of the highway and collided with the post. They contend that posts of a "break-away" design should have been used to avoid subjecting motorists to an unreasonable risk of injury, in that collisions with such posts are readily foreseeable when the posts are being used for their intended function; *i.e.*, to support exit signs within a few feet of highways. Even if we were to agree that such collisions are foreseeable, foreseeability alone does not define a manufacturer's duty in products liability.

A manufacturer is not under a duty in strict liability to design a product which is totally incapable of injuring those who foreseeably come in contact with the product. Products liability does not make the manufacturer an insurer of all foreseeable accidents which involve its product. Virtually any product is capable of producing injury when put to certain uses or misuses. This is particularly true when injury results from a collision with the product. Injuries are not compensable in products liability if they derive merely from those inherent properties of a product which are obvious to all who come in contact with the product. (*Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 467.) The injuries must derive from a distinct defect in the product, a defect which subjects those exposed to the product to an *unreasonable* risk of harm. The Restatement (Second) of Torts concludes that strict liability applies only when the product is "dangerous to an extent *beyond* that which would be contemplated by

the ordinary [person] \*\*\*, with the ordinary knowledge common to the community as to its characteristics." (Emphasis added.) Restatement (Second) of Torts sec. 402A, comment *i* (1965).

In the case at bar, plaintiffs have alleged no legally cognizable defect in the sign post. They have merely indicated a preference for "break-away" posts. However valid that preference might be, the availability of an alternative design does not translate into a legal duty in products liability. An action is not maintainable in products liability merely because the design used was not the safest possible. Here, there is no allegation of a defect in the post which affected its intended or actual use—to safely support the sign. The risks which inhered in the collision with the post were the same risks which attend all collisions between motorists and stationary objects which align the highway. In the absence of any facts which would indicate that the post, in supporting the sign, subjected motorists to any unreasonable or unexpected risks, we cannot sustain plaintiffs' action in strict liability.

Accordingly, we affirm the judgments of the trial and appellate courts with respect to both the negligence and strict liability counts.

*Judgments affirmed.*