HENRY D. MADDAN, Plaintiff-Appellant, v. R. A. CULLINAN & SON, INC., Defendant-Appellee.

Third District  No. 79-799

Opinion filed September 30, 1980.—Rehearing denied October 27, 1980.

BARRY, J., dissenting.

William T. Makovic, of East Peoria, for appellant.

Richard E. Quinn, of McConnell, Kennedy, Quinn & Johnston, of Peoria, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

On April 20, 1975, the plaintiff, Henry D. Maddan, was seriously injured when the car he was driving in a westerly direction on State Route 98 near Pekin crossed over the eastbound traffic lane and struck a metal guardrail located on the south shoulder 1½ feet from the edge of the paved portion of the highway. The defendant, R. A. Cullinan & Son, Inc., was alleged in plaintiff's complaint to be the manufacturer, assembler, and installer of the guardrail. The defendant was to construct and install the guardrail in accordance with plans and specifications required by the State of Illinois, which provided that an "offset" guardrail be connected or attached to the blunt end of the guardrail. The purpose of this offset

guardrail was to deflect a vehicle colliding with it. However, at the time of plaintiff's accident no offset guardrail had yet been installed. The defendant had not completed its contract with the State, nor had its work been approved or accepted by the State at the time of the occurrence. When the plaintiff's vehicle collided with the end of the guardrail it was not deflected but instead became impaled. Fifteen feet of the guardrail entered the plaintiff's vehicle, and as a result of the injuries sustained in the collision the plaintiff's left leg was amputated below the knee. In count II of a multicount complaint, the plaintiff sought damages in the amount of $100,000 from the defendant under a products liability theory. This count was subsequently dismissed by the Circuit Court of Tazewell County upon the defendant's motion. It is from this order dismissing count II that the plaintiff appeals.

■■ The only issue presented in this case for our resolution is whether the circuit court erred in dismissing count II of the plaintiff's complaint. The plaintiff contends that count II states a valid cause of action in products liability against the defendant, and as a consequence the dismissal of that count was improper. Under *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182, there are three elements of a cause of action in strict products liability: first, the injury must result from a condition of the product; second, the condition must be unreasonably dangerous; and third, the condition must have existed at the time the product left the manufacturer's control. *E.g., Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368; Restatement (Second) of Torts §402A (1965).

We need not be concerned with the first two enumerated elements, since it is patently clear that the facts as set forth in count II of the plaintiff's complaint do not meet the requirement set forth as to the third element. Assuming *arguendo* that the guardrail was a product which was unreasonably dangerous, it had not left the manufacturer's control. The guardrail was only partially constructed; it had not been accepted or approved of by the State. In short, it had not been placed in the stream of commerce. The plaintiff is asking that this court extend the doctrine of products liability to unfinished or partially constructed structures. To agree with the plaintiff would require that a manufacturer or builder would from the onset of his efforts have to at all times have "absolute end product" safety features in the product being manufactured or the structure being built.

The plaintiff relies on *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368, as authority for his argument that the guardrail was a product for strict liability purposes. The case of *Hunt* involved a highway signpost. However, it is pertinent to note that the sign which was struck by a motor vehicle had been completed 3½ years before the accident and had been approved and accepted by the State. Again assuming *arguendo*

that the signpost involved in the case of *Hunt* was a product, it had left the manufacturer's control and had entered the stream of commerce.

■■■ Having concluded that the guardrail in the instant case had not left the defendant contractor's control, it follows that the plaintiff's attempt to impose the doctrine of strict tort liability is not well founded. We are, however, not disposed to determine this question of strict liability on such narrow grounds. We cannot agree with the contention of the plaintiff that the law of product liability should be applicable in a situation where a plaintiff is injured when his motor vehicle has a collision with a guardrail. We are of this opinion regardless of whether construction of the rail was completed or incompleted. Classify a guardrail as a product and the courts will next be confronted with the assertion that State-planted trees, culverts, bridges and highways themselves are products. We do not believe that the doctrine of products liability which has evolved and expanded was ever intended to encompass such items. To say that such items are in the "stream of commerce" defies logical reasoning. Parties injured in accidents involving guardrails, bridges and similar accidents if not negligent have ample theories of redress, as does the plaintiff in the instant case. We make this assertion being fully aware of the signpost case, *viz., Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368. We are cognizant of the fact that our supreme court in the case of *Hunt* set forth strong language to the effect that a State signpost was a product and that a collision with the same imposed strict liability upon the designer, builder and installer of the post. However, in spite of such language, our supreme court in *Hunt* affirmed a circuit court and an appellate court, the effect of which was to deny recovery to the plaintiffs. A close examination of *Hunt* and our supreme court's criteria as to the pleadings required of a plaintiff in order to impose strict liability makes it far from clear that a signpost as in *Hunt* and a guardrail such as we have in the instant case can be classified as products which have entered the "stream of commerce" and which would give rise to the application of the products liability law when one is injured as the result of colliding with such objects.

For the aforesaid reasons the judgment of the Circuit Court of Tazewell County dismissing count II of the amendment to the complaint is affirmed.

Affirmed.

STENGEL, J., concurs.

Mr. JUSTICE BARRY, dissenting:

Because I disagree with both the analysis and conclusions of the majority in ·this cause, I respectfully dissent from the opinion of my colleagues.

The decision of the majority affirming the circuit court's dismissal of count II of the plaintiff's complaint is premised upon two erroneous legal conclusions. The first is that because the guardrail was not completed and had not been accepted or approved by the State of Illinois at the time of the accident, it was not placed in the stream of commerce. As a consequence, the majority hold that the third element of a products liability claim under *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182, was not met. In reaching this conclusion, the majority disregard important policy considerations which mandate a contrary result.

Among the important policy considerations underlying the imposition of strict products liability are "(1) that the public interest in human life and health requires protection of law, and (2) that the manufacturer solicits and invites use of the product, thereby representing to the public that it is safe and suitable for use." (*Domine v. Fulton Iron Works* (1979), 76 Ill. App. 3d 253, 258, 395 N.E.2d 19, 23.) I believe these considerations compel extension of products liability analysis to the instant case. As the plaintiff alleges in count II of his complaint, the purpose of a guardrail is to protect users of the highway from serious injury by deflecting "oncoming automobiles foreseeably deviating from the pavement." This purpose, however, is defeated by the absence of the offset guardrail. Without the offset guardrail to deflect errant vehicles, the guardrail does not serve to protect highway travelers, but instead becomes a hazard to all those who use the highway. The people of this State and of other States who use Illinois highways should not be exposed to such an unreasonable and unnecessary risk of harm. Accordingly, the law should offer foreseeable plaintiffs protection by imposing strict liability in tort upon all those responsible for creating such unreasonably dangerous conditions.

Further, even though the guardrail was in an unfinished state at the time of the collision, the defendant invited its use and represented to the public that it was safe and suitable for the use for which it was intended by installing it along the highway which was open to public travelers. In so doing, I believe the defendant has placed the product in the stream of commerce and thereby exposed itself to liability if the unreasonably dangerous defect in the product (*i.e.*, the absence of the offset guardrail) caused injury to a highway traveler. The fact that the guardrail was in unfinished form should be of no concern. What is of importance in products liability cases is not whether the product is in finished form when it is offered for the public use, but whether the product contains a defect which is unreasonably dangerous when offered to the public for use. The defendant should have either refrained from placing this product, which is unreasonably dangerous in its unfinished state, into the stream of commerce prior to completion, or should have taken steps to

prevent foreseeable injury as a result of its unfinished state. Concern for the safety of the public requires no less.

Alternatively, the majority hold that even if the guardrail had been completed at the time of plaintiff's collision with it, dismissal of count II of the plaintiff's complaint still would have been proper because the guardrail is not a product for strict liability purposes. I disagree with this conclusion for two reasons. First, the courts of this State have given the term "product" a very broad interpretation. In *Dubin v. Michael Reese Hospital* (1979), 74 Ill. App. 3d 932, 393 N.E.2d 588, the First District Appellate Court, after discussing a number of Illinois cases in which the issue of what constitutes a product under section 402A of the Second Restatement of Torts (Restatement (Second) of Torts §402A (1965)) was addressed, defined a product for products liability purposes as follows:

> "[A] 'product' with an unreasonably dangerous condition may subject those responsible for placing it in the stream of commerce to strict liability in tort may serve more than one purpose; may be unchanged from its natural state, viable, and not the result of a manufacturing process; must be of a fixed nature; and must be capable of being placed in the stream of commerce. Moreover, to satisfy the public policy reasons underlying the concept of strict liability in tort, we must also find that the 'product' is something that may endanger human life and health; something whose intended use has been solicited and thought to be safe and suitable; and something that has reaped a profit for those placing it in the stream of commerce. Finally, we must consider the defendant's ability to distribute the risk of injury by passing the loss onto the public, and the injured party's difficulty in proving that the source of his injury was the defendant's negligence." 74 Ill. App. 3d 932, 939, 393 N.E.2d 588, 593.

Given such a broad definition, I believe there can be no question that the guardrail in the instant case is a product for purposes of product liability analysis. Second, in *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368, the Illinois Supreme Court never questioned the classification of an object very similar to the guardrail in the instant case (*i.e.*, a highway signpost) as a product for strict liability purposes. The majority attempt to distinguish *Hunt* by pointing out that there the signpost with which the plaintiff collided had been completed and accepted by the State some three years prior to the accident, and the eventual resolution of the *Hunt* litigation in favor of the defendant makes it unclear that the supreme court had accepted the plaintiff's designation of a signpost as a product. Neither of these assertions, however, convinces me of the inapplicability of *Hunt* to the case at bar. As previously stated, I do not believe that the unfinished state of a product offered for the public use is to serve as a shield from

liability when that unfinished state itself constitutes an unreasonably dangerous defect which causes injury to a foreseeable plaintiff. Similarly, the majority's emphasis on the fact that the signpost in *Hunt* had been accepted by the State is misplaced. If a manufacturer invites public use of a product containing an unreasonably dangerous defect which causes injury to a foreseeable plaintiff, liability should attach notwithstanding the unfinished state of the product or the lack of requisite approval of the product by a designated party. Finally, although it is true that in *Hunt* the supreme court affirmed the circuit and appellate courts' entry of summary judgment for the defendant, the supreme court's action was based upon the failure of the plaintiff to allege in his complaint the existence of a legally cognizable defect in the signpost. Nowhere in the *Hunt* opinion is there any indication, express or otherwise, that the signpost was not a product. Indeed, a reading of *Hunt* suggests a contrary conclusion.

To recover in strict products liability, "the injury must result from a condition of the product, the condition must be unreasonably dangerous and the condition must have existed at the time the product left the manufacturer's control." (*Hunt*, 74 Ill. 2d 203, 210, 384 N.E.2d 368, 372.) Count II of the plaintiff's complaint contains these allegations. For this reason as well as for the reasons I have heretofore stated, I would reverse the order of the circuit court of Tazewell County dismissing count II of the complaint, and remand for further proceedings.