SHIRLEY BODDIE, Plaintiff-Appellant, *v.* LITTON UNIT HANDLING SYSTEMS *et al.*, Defendants-Appellees.

First District (1st Division)   No. 82—1664

Opinion filed September 26, 1983.—Rehearing denied November 7, 1983.

Jeffrey M. Goldberg, of Chicago, for appellant.

James K. Toohey and Barbara Ross, both of Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago, for appellee Litton Unit Handling Systems.

Michael J. Ross, of French, Rogers, Kezelis & Kominiarek, P.C., of Chicago, for appellee Orr & Associates.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

This appeal arises out of an action brought to recover damages for injuries plaintiff Shirley Boddie suffered as a result of her exposure to a conveyor system furnished by defendants. The trial court granted summary judgment on counts sounding in strict liability, wilful and wanton conduct and breach of warranty and also granted a motion to dismiss counts sounding in negligence.

Plaintiff was an employee of the United States Post Office, working in the bulk mail center in Forest Park, Illinois. On August 17, 1976, plaintiff's hand was caught in a partially exposed chain and gear drive mechanism which was part of the conveyor resulting in amputation of two fingers and injury to a third finger. The instant action was subsequently filed against defendants Orr & Associates (Orr), the general contractor, and Litton Unit Handling Systems (Litton), the subcontractor who designed and built the conveyor system.

The record reveals that Kaiser Engineers and A. T. Kearney, Inc.,

provided the postal service with the initial plans and specifications for the Forest Park postal facility. The plans submitted by Kaiser gave general specifications for the conveyors and guards but did not provide an actual design for the chain guard. Rather, the specifications included only a general description of the type of guards to be used, and provided:

"(a) 10.2.12.1—All chain drives shall be totally enclosed in drip tight steel chain casings ***.

(b) 10.1—All equipment items and accessories shall be designed and fabricated in accordance with industrial safety practices to eliminate hazards to employees, including entanglement of clothing ***.

(c) 10.12.1—Protective Enclosures and Guards. For inclined conveyor, protective enclosures shall be provided *** to provide safety guarding against contact by personnel with moving belts, pulleys or rollers."

Subsequently, these plans were let out for bid and Orr, the successful bidder, entered into a contract with the Corps of Engineers. Thereafter, Orr entered into a subcontract with Litton under which Litton agreed to design and manufacture the conveyor system involved in this accident. The sections of the conveyor were to be built at Litton's plant and shipped in a completed state for assembly at the job site. During the process of assembling the conveyor, it was determined that the completely enclosed guard would not fit the telescoping conveyor section involved in this accident. Litton subsequently equipped the conveyor with an open back three sided guard which ultimately resulted in plaintiff's injuries and the filing of the instant action to recover damages.

In granting defendants' motions for summary judgment on the strict liability counts, the court below made the following findings: (1) there was no genuine issue of material fact as to whether the change to the open back guard was authorized; (2) the doctrine of strict liability was inapplicable because the conveyor was not a product but rather a fixture which had become merged with the realty; and (3) the doctrine of strict liability did not apply because the conveyor never entered the stream of commerce. With respect to the warranty counts filed pursuant to the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1981, ch. 26, par. 2—101 *et seq.*), the court found (1) the contracts involved were not for the sale of goods and therefore did not come under the purview of article 2 of the UCC; (2) the plaintiff did not qualify as a third-party beneficiary under section 2—318 of the UCC (Ill. Rev. Stat. 1981, ch. 26, par. 2—318); and (3) there was no material

issue of fact on the issue of contract compliance by defendants. The court had previously granted summary judgment on counts asking for, punitive damages based on a determination that there was contract compliance and the change to the open back guard was authorized.

Plaintiff was then given leave to amend her complaint to include counts sounding in negligence. Defendants filed motions to dismiss, arguing that the court had already determined that the open back guard eventually installed on the conveyor was authorized by the Corps of Engineers and, therefore, under *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368, plaintiff was precluded from recovering on a negligence theory. On June 23, 1982, the court granted defendants' motions.

Plaintiff appeals from the trial court's rulings dismissing the negligence counts and granting summary judgment on the strict liability, warranty and punitive damages counts.

I

We will first address plaintiff's arguments raised in connection with the dismissal of the negligence counts.

■ The standard by which contractors and subcontractors are to be judged in determining if they are liable for injuries caused by their negligence in carrying out another's design specifications is set out in *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368. There, the court held that an independent contractor owes no duty to third persons to judge the plans, specifications or instructions he has merely contracted to follow. If the contractor carries out the specifications provided him, he is justified in relying upon their adequacy unless they are so obviously dangerous that no competent contractor would follow them. Accordingly, to recover against a contractor on a negligence theory, a plaintiff must demonstrate either noncompliance with contract specifications proximately resulting in injury or that the contract specifications are so defective a builder of ordinary prudence would be put on notice that the work was dangerous and likely to cause injury. 74 Ill. 2d 203, 209-10.

■ In the case at bar, the trial court's dismissal of the negligence counts against the contractor Orr and the subcontractor Litton was predicated on previous findings in the court's rulings on motions for summary judgment with respect to the strict liability, warranty and punitive damages counts. There, the court found that there was no material issue of fact as to whether the change to the open back guard was authorized and approved and, therefore, Orr and Litton had complied with all contract specifications. Plaintiff contends the

court erred in dismissing the negligence counts since the pleadings, exhibits, and depositions filed by the parties in connection with the motions for summary judgment clearly revealed the existence of a significant factual dispute on this issue. We agree.

Since the trial court's granting the dismissal was based on a prior finding that there was no material issue of fact to be tried with respect to contract compliance, the motion was in reality one for summary judgment and will be treated as such on review. Summary judgment is appropriate if there is no genuine issue as to any material fact such that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005(c).) In ruling on a motion for summary judgment, the trial court should construe the pleadings, affidavits, exhibits and depositions most strictly against the moving party and most liberally in favor of the opponent (*Shockley v. Ryder Truck Rental, Inc.* (1979), 74 Ill. App. 3d 89, 93-94, 392 N.E.2d 675) and should grant the motion only where the right of the movant is clear and free from doubt (*Burks Drywall, Inc. v. Washington Bank & Trust Co.* (1982), 110 Ill. App. 3d 569, 442 N.E.2d 648).

In the present case, it is clear that the open back chain guard provided by Litton did not comply with the original specifications which called for a totally enclosed guard. In order to demonstrate contract compliance, Litton relied solely on an oral modification of the original contract specifications approved by Robert Schmeiser, a Corps of Engineers inspector. However, after reviewing the record, we find that a material issue of fact exists as to whether Schmeiser had authority to approve changes in contract specifications.

In the deposition of William Wyner, Orr's project manager, testimony was elicited to the effect that Robert Schmeiser had no authority to approve contract changes in specifications. Wyner further testified that only Howard Gregory, the authorized representative of the contracting officer, had such authority.

Of greater import is Robert Schmeiser's own testimony. When questioned specifically about his authority, he stated in his evidence deposition:

"Q. I understand that, sir. Howard Gregory had to authorize the change. He was the one that was the contracting officer. Is that correct?

A. Yes.

* * *

Q. *** Is it correct that Howard Gregory had the only authority to approve changes?

A. Yes.

* * *

Q. So, you don't recall as you sit here today whether you ever discussed substituting chain guards with Howard Gregory. Is that right?

A. That is correct."

When asked similar questions in a discovery deposition, Schmeiser testified:

"Q. You do know that he (Howard Gregory) never gave you any authorization to change or to authorize contractors not to comply with written specifications. Is that correct?

A. I am sure.

Q. You are sure he didn't?

A. He didn't."

Testimony given by Orr employees also indicates that Orr was unaware of any change or authorization to change the guards and that Litton had never received an order to change or modify its contract with Orr on this matter. Under these circumstances we find that material issues of fact existed with respect to whether the changes in contract specifications permitting an open back guard were properly authorized and approved. These factual issues bear directly on whether Litton and Orr complied with contract specifications and, therefore, dismissing the counts sounding in negligence was improper. Accordingly, we reverse the trial court's dismissal of the negligence counts against Orr and Litton.

## II

■ Plaintiff next contends that the trial court erred in granting defendants' motions for summary judgment on the strict liability counts. Since we have already found that a material issue of fact exists with respect to contract compliance, an alternative basis for affirmance must be found if the court's ruling on the motion is to be upheld.[1] Defendants advance two arguments—first, that the conveyor system was a real estate fixture which had merged with the realty and was therefore not a product; and second, that the conveyor had never entered the stream of commerce. The proper resolution of this case will therefore require an examination of what items may be deemed products and thus be subject to an action for strict liability in tort, as well as a construction of the term "stream of commerce" for

---

[1]In view of our finding on the issue of contract compliance, we also do not reach the issue raised by defendants on whether compliance with contract specifications precludes recovery in strict liability.

strict liability purposes.

In *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182, the supreme court adopted the doctrine of strict products liability embodied in section 402A of the Restatement (Second) of Torts. That section provides in relevant part:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." Restatement (Second) of Torts sec. 402A (1965).

Our supreme court has not directly ruled on what constitutes a product for strict liability purposes. However, this court has stated that the social policy justifications underlying the imposition of strict liability in tort rather than the dictionary definition of the term "product" should be determinative on this issue. (*Lowrie v. City of Evanston* (1977), 50 Ill. App. 3d 376, 365 N.E.2d 923.) Those public policy considerations have been set forth as being: (1) the public interest in human life and health; (2) the invitations and solicitations of the manufacturer to purchase the product; (3) the justice of imposing the loss on the manufacturer who created the risk and reaped the profit; and (4) the superior ability of the commercial enterprise to distribute the risk of injury proximately caused by the defective condition of its product by passing the loss on to the public as a cost of doing business. (*Immergluck v. Ridgeview House, Inc.* (1977), 53 Ill. App. 3d 472, 474, 368 N.E.2d 803.) Several appellate court decisions have had occasion to apply these policy considerations in resolving whether buildings and their component parts should be considered products under the doctrine of strict liability.

In *Lowrie v. City of Evanston* (1977), 50 Ill. App. 3d 376, 365 N.E.2d 923, the court affirmed the dismissal of strict liability counts brought against the operator of an open air parking garage. The action was brought by the personal representative of an individual killed in a fall from one of the upper levels of the garage. The *Lowrie* court refused to find that such a garage was a product within the purview of section 402A, basing its decision on the belief that the original framers of the Restatement did not contemplate a structure such as a building to be a proper subject for a strict liability action. The court noted that buildings were not included in the listing of product types

given in comment d to section 402A and also that the liability of builders was articulated in other sections of the Restatement. 50 Ill. App. 3d 376, 384-85.

In *Immergluck v. Ridgeview House, Inc.* (1977), 53 Ill. App. 3d 472, 368 N.E.2d 803, the plaintiff fell from a window in a sheltered-care facility and brought a strict products liability action against the owner. She alleged that the facilities were unreasonably dangerous because of the absence of any device to prevent egress through the windows. In affirming the dismissal below, the court held that a sheltered-care facility was not a product for strict liability purposes and, referring to the policy considerations inherent in the doctrine, the court stated:

> "[D]efendant is clearly not in the business of the mass production or supply of sheltered-care facilities, and the facility in question is not in any stream of commerce. It must also be noted that there is no difficulty of access to a remote manufacturer or supplier, and there is no mass production over which a risk of injury may be distributed." 53 Ill. App. 3d 472, 476.

A similar result was reached in *Heller v. Cadral Corp.* (1980), 84 Ill. App. 3d 677, 406 N.E.2d 88, where plaintiff had purchased a condominium home and sought to recover damages for construction defects based on a strict products liability theory. Citing *Lowrie* and *Immergluck* with approval, the court held that a condominium unit was not a product for strict liability purposes. In reviewing the cases from other jurisdictions which had extended the doctrine to buildings and their component parts, the court noted that in those cases permitting recovery the court "focused upon a defect in some product in the home rather than the home itself. Strict liability was thus applied to a contractor who built and/or sold homes containing a defective product." 84 Ill. App. 3d 677, 680.

Most recently, in *Walker v. Shell Chemical, Inc.* (1981), 101 Ill. App. 3d 880, 428 N.E.2d 943, the court had occasion to further articulate the law of strict products liability in relation to buildings and component parts of buildings. In *Walker*, a worker brought an action against a guardrail manufacturer and others for injuries sustained in a fall on a construction site when a guardrail broke. Referring to *Heller, Lowrie* and *Immergluck*, the court concluded that if the guardrail was actually a component and indivisible part of the entire building structure, it may not be considered a product for strict liability purposes. In reviewing the dismissal of the strict liability counts below, the court found the factual allegations insufficient, and affirmed.

A review of the above cases reveals an attempt to define the lim-

its of strict products liability in relation to buildings and component parts of buildings. Clearly, the scope of strict products liability does not extend so far as to include buildings *per se* and other similar structures. However, a defective item associated with a building may give rise to such an action, provided the item has not become an indivisible component part of the building or structure.

Applying our previous decisions to the present case, we find the conveyor in the instant action to be a product subject to the doctrine of strict products liability. Accordingly, we reject defendants' contention that the conveyor's status as a real estate fixture precludes a recovery based on strict liability. Numerous cases in Illinois and elsewhere have either applied the doctrine of strict liability in tort to products which would be clearly classifiable as real estate fixtures or have specifically held such items to be products for strict liability purposes. (See *Brannon v. Southern Illinois Hospital Corp.* (1978), 69 Ill. App. 3d 1, 386 N.E.2d 1126 (dumbwaiter); *Luna v. Rossville Packing Co.* (1977), 54 Ill. App. 3d 290, 369 N.E.2d 612, and *Karabatsos v. Spivey Co.* (1977), 49 Ill. App. 3d 317, 364 N.E.2d 319 (conveyor systems); *Troszynski v. Commonwealth Edison Co.* (1976), 42 Ill. App. 3d 925, 356 N.E.2d 926 (electric utility meter box); *Begay v. Livingston* (1981), 99 N.M. 359, 658 P.2d 434 (heating unit in motel room); *Kaneko v. Hilo Coast Processing* (Haw. 1982), 654 P.2d 343 (component parts of a prefabricated building); *De Crosta v. A. Reynolds Construction & Supply Corp.* (1975), 49 App. Div. 476, 375 N.Y.S.2d 655, *aff'd* (1977), 41 N.Y.2d 1100, 396 N.Y.S.2d 357, 364 N.E.2d 1129 (in-ground swimming pool).) These holdings are in accord with comment d to section 402A of the Restatement, which lists fixtures such as a water heater and a gas stove as products for strict liability purposes.

Our holding in *Walker* should not be read so broadly as to incorporate the law of fixtures into products liability law. What items are to be deemed products must be based on the underlying policies for strict liability in tort to which the law relating to fixtures is only tangentially relevant. *Walker* imposes a limitation on the application of strict liability only with regard to those items which are an indivisible part of the building structure itself, such as the bricks, supporting beams and railings. Such items are significantly different than a conveyor system housed in a building since they do not have an indivisible identity prior to installation but are rather indivisible component parts of the building itself.

■ We also reject defendants' contention that the conveyor never entered the stream of commerce because it was produced solely for

government use. The phrase "stream of commerce" is not found in the text of section 402A, nor in the accompanying comments. However, the phrase has been used by courts to make the distinction between the one time or casual seller to whom strict products liability does not apply and a defendant engaged in the business of selling products as required by section 402A(1)(a).[2] (See *Luna v. Rossville Packing Co.* (1977), 54 Ill. App. 3d 290, 369 N.E.2d 612.) "Stream of commerce" does not require that the product be mass produced or placed on the shelf at numerous locations. It is sufficient if the defendant is engaged in the business of selling the product and markets it to a buyer for the buyer's use even if the buyer is the United States government. (See *Foster v. Day & Zimmermann, Inc.* (8th Cir. 1974), 502 F.2d 867.) Clearly, Litton is in the business of designing and marketing conveyor systems and clearly Orr was in the chain of distribution. Accordingly, we reject defendants' contention that the product never entered the stream of commerce.

In view of the foregoing, we reverse that portion of the judgment granting summary judgment on the strict liability counts.

### III

■ Plaintiff next contends that the court erred in granting defendants' motions for summary judgment on the warranty counts filed pursuant to article 2 of the UCC as enacted in Illinois (Ill. Rev. Stat. 1981, ch. 26, par. 2—101 *et seq.*). Defendants argue that the contracts involved were service contracts and therefore the UCC warranty provisions are inapplicable. In the alternative, defendants contend that if the UCC is applicable, plaintiff is not a third party beneficiary of the UCC warranty provisions under section 2—318. Since plaintiff alleges breach of warranty with respect to both the Orr-United States government general contract and the Litton-Orr subcontract, the applicability of the UCC to each of these contracts will be considered separately.

---

[2]This point is addressed in comment f to section 402A of the Restatement, which provides:

"The rule does not, however, apply to the occasional seller of food or other such products who is not engaged in that activity as a part of his business. Thus it does not apply to the housewife who, on one occasion, sells to her neighbor a jar of jam or a pound of sugar. Nor does it apply to the owner of an automobile who, on one occasion, sells it to his neighbor, or even sells it to a dealer in used cars, and this even though he is fully aware that the dealer plans to resell it." Restatement (Second) of Torts sec. 402A, comment *f*, at 350 (1965).

The scope of article 2 is specifically limited to "transactions in goods." (Ill. Rev. Stat. 1981, ch. 26, par. 2—102.) A contract which is primarily for the rendition of services is not a "transaction in goods" within the meaning of article 2 and is therefore not covered by the UCC warranty provisions. (*Pitler v. Michael Reese Hospital* (1980), 92 Ill. App. 3d 739, 415 N.E.2d 1255.) Where a contract mixes the sale of goods with the rendition of services, the following frequently cited test is used in determining whether the contract falls within the scope of article 2:

> " 'The test for inclusion or exclusion is not whether [the contracts] are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (*e.g.*, contract with artist for painting) or is a transaction of sale, with labor incidentally involved (*e.g.*, installation of a water heater in a bathroom).' " *Meeker v. Hamilton Grain Elevator Co.* (1982), 110 Ill. App. 3d 668, 670, 442 N.E.2d 921, citing *Bonebrake v. Cox* (8th Cir. 1974), 499 F.2d 951, 960.

Applying these principles to the case at bar, we must reject plaintiff's contention that the Orr-United States government contract falls within the ambit of article 2. We note that contract bears the legend "Construction Contract" and requires Orr to (1) complete the remaining construction work for the mail processing center; (2) complete various alterations and modifications on the building; (3) complete the construction of exterior utilities and services, including drainage, pavement, walks, fencing and demolition work; (4) construct caisons, including excavation, metal casings, concrete and related work; (5) construct lookout galleries from prefabricated modules; and (6) furnish, install, connect, adjust, and test a complete package-sorting conveyor system. Such general construction contracts encompassing the erection of buildings, the installation of utilities and services, with extensive excavation and demolition, have as their primary thrust the rendition of services rather than the sale of goods. Since the Orr-government contract was clearly not a transaction in goods, Orr's motion for summary judgment on the warranty count was properly granted.

■ The character of the Litton-Orr subcontract is more problematic. However, we need not address that issue for, assuming *arguendo* that the subcontract comes within the scope of article 2, plaintiff still fails to satisfy the section 2—318 requirements for third party beneficiaries.

Section 2—318 provides in relevant part:

> "A seller's warranty whether express or implied extends to

any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty." Ill. Rev. Stat. 1981, ch. 26, par. 2—318.

This section defines the class of persons entitled to benefit from the warranty provisions of article 2, even though they are not buyers of goods within the distributive chain. The States that adopted the UCC were free to choose from among three alternative drafts of section 2—318. Illinois chose the most restrictive version, alternative A, which limits nonbuyer coverage to family members, household members and household guests of the buyer. Alternative B extends the article 2 warranties to any natural person who may reasonably be expected to use, consume or be affected by the goods and who is injured in person by a breach of warranty. Alternative C goes further, extending coverage to any person, natural or otherwise, and does not limit liability to breaches resulting in personal injury. Thus, both alternatives B and C do away with the requirement that a nonbuyer must have some relationship to a buyer of the goods causing injury (family member, household member or household guest) before he can recover under the warranty provisions of the UCC as a third-party beneficiary.

The express words of section 2—318 as adopted in Illinois do not include employees of buyers among the class of persons entitled to protection as third-party beneficiaries. Nevertheless, plaintiff argues that it would be illogical to extend warranty protection to guests of the buyer's household who are only remotely connected with the product and refuse protection to employees of a purchaser of a machine intended for industrial use. Plaintiff cites *Knox v. North American Car Corp.* (1980), 80 Ill. App. 3d 683, 399 N.E.2d 1355, in support of her contention, wherein the court stated in *dicta* that where the employer is the last purchaser of goods, an employee stands in a relationship that is the functional equivalent of a guest or family member. (80 Ill. App. 3d 683, 689.) We agree with plaintiff's argument that third-party beneficiary status can and should be expanded to include employees of ultimate purchasers even under the restrictive section 2—318 adopted in Illinois. (See *Delta Oxygen Co v. Scott* (1964), 238 Ark. 534, 383 S.W.2d 885; *Barfield v. Atlantic Coast Line R.R. Co.* (Fla. App. 1967), 197 So. 2d 545; *Salvador v. Atlantic Steel Boiler Co.* (1974), 457 Pa. 24, 319 A.2d 903—all extending coverage to employees of buyers.) However, plaintiff's argument misses the mark.

The threshold issue here is whether plaintiff is an employee of the

buyer of goods under a contract of sale covered by the UCC. As plaintiff has maintained throughout her brief, Litton had no direct contractual relation with the government. Its only contract was with Orr for the design and manufacture of the conveyor system. Consequently, the only buyer of goods in the Litton-Orr contract was Orr.[3]

In order for plaintiff to be a third-party beneficiary under the restrictive alternative of section 2—318 adopted in Illinois, she must demonstrate that a contract for the sale of goods within the ambit of article 2 exists *and* that she is either a family member, household member, household guest or employee of the buyer under that contract. Here, the two elements never coincide. Plaintiff can demonstrate that she is an employee of a party that has received goods incidentally under a service contract (Orr-government contract) not covered by the UCC. She can also demonstrate she was injured by a product sold in the Litton-Orr transaction which is covered by the UCC, but her relationship to the buyer Orr is lacking. In order to grant plaintiff third-party status, we would be forced on one hand to eliminate the requirement that the contract be within the scope of article 2, and, on the other, to eliminate the requirement that the third party stand in proper relation to a buyer. This we decline to do.

Accordingly, that portion of the judgment granting defendants' motions for summary judgment on the warranty counts is affirmed.

### IV

Finally, plaintiff contends that the court erred in granting defendants' motions for summary judgment on the wilful and wanton counts seeking punitive damages.

Punitive damages are in the nature of a criminal penalty and are not favored under the law. (*Cornell v. Langland* (1982), 109 Ill. App. 3d 472, 440 N.E.2d 985.) The general purposes for imposing punitive damages are to punish wrongdoers and to deter them and others from engaging in similar conduct. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186, 384 N.E.2d 353.) In addressing this issue, the court in *Kelsay* expressed the traditional standard for awarding exemplary damages:

> "It has long been established in this State that punitive or exemplary damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence

---

[3]Throughout part III of this opinion we are assuming for purposes of argument only that the UCC is applicable to the Litton-Orr contract.

as to indicate a wanton disregard of the rights of others [citation]." 74 Ill. 2d 172, 186.

The awarding of punitive damages within the context of products liability cases presents problems unique to that area of law. The defendants are generally manufacturers, frequently large national concerns that command little sympathy from jurors. Ascribing the human qualities of malice or wilfulness to corporate entities is often paradoxical. Noting these problems, the court in *Moore v. Remington Arms Co.* (1981), 100 Ill. App. 3d 1102, 427 N.E.2d 608, formulated a test for evaluating commercial misconduct and the propriety of granting an award of punitive damages:

> " 'The first [characteristic] is the manufacturer's lack of concern for the public safety, a spirit of utter indifference to whether the product might cause unnecessary injuries. The second characteristic is the flagrancy of this indifference as reflected by the extent of the manufacturer's awareness of the danger and its excessiveness, the over-all magnitude of the danger to the public, the ease of reducing the risk, and the motives and other circumstances attending the manufacturer's failure to reduce the risk.' " (100 Ill. App. 3d 1102, 1114, quoting Owen, *Punitive Damages in Products Liability Litigation*, 74 Mich. L. Rev. 1257, 1266 (1976).)

Thus, punitive damages are proper where the defendant's conduct reflects a flagrant indifference to public safety. 100 Ill. App. 3d at 1115.

■ With respect to defendant Litton, we cannot say that the pleadings, exhibits and depositions submitted in connection with its motion for summary judgment raise no triable issue of fact on whether exemplary damages are justified. The original contract specifications called for a totally enclosed guard. Testimony elicited from Litton employees indicates Litton knew that the substituted open guard was not as safe, knew that a totally enclosed guard could have prevented the accident, and knew that a totally enclosed guard could have been built in conformance with the original contract specifications. Viewing these depositions most liberally in favor of plaintiff and strictly against the movant Litton, we find a material issue of fact exists on whether Litton's conduct rises to the level of flagrant indifference to public safety. Accordingly, we reverse the granting of summary judgment in favor of Litton on the wilful and wanton count seeking punitive damages.

■ With respect to defendant Orr, however, we find the trial court properly granted the motion for summary judgment. The testimony given by representatives of Orr, Litton and the government all

indicate that Orr played a minimal role in the design and manufacture of the conveyor system. While a question of fact exists on Orr's negligence in connection with the performance of its contract with the government, evidence of its awareness of a danger to the public is absent. Accordingly, Orr's conduct does not constitute a flagrant indifference to public safety warranting the imposition of exemplary damages.

In summary: we reverse the dismissal of the negligence counts against Orr and Litton; we reverse the granting of summary judgment on counts sounding in strict liability as to both defendants; we affirm the granting of summary judgment on counts sounding in warranty; and the granting of summary judgment on the wilful and wanton counts is reversed as to Litton and affirmed as to Orr.

Affirmed in part; reversed in part; remanded for further proceedings.

GOLDBERG and CAMPBELL, JJ., concur.