RICHARD P. SKARSKI, Plaintiff-Appellant, v. ACE-CHICAGO GREAT DANE CORPORATION, Defendant-Appellee.

First District (4th Division)   No. 84—2400

Opinion filed November 21, 1985.

302

Chris J. Heaney, of Jacobs, Buikema, Malak, Heaney & Hiskes, of South Holland, for appellant.

James W. Kissel, of Sidley & Austin, of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Richard Skarski, brought a one-count products liability action in the circuit court of Cook County against defendant, Ace-Chicago Great Dane Corporation, seeking damages for injuries suffered while attempting to repair a refrigeration unit attached to a trailer that defendant owned. The trial court granted defendant's motion for summary judgment. Plaintiff now appeals, contending that the trial court improperly granted summary judgment for defendant.

We reverse and remand.

The record shows that defendant, a dealer and distributor of trailers, bought a trailer equipped with a refrigeration unit for the purpose of resale. Illinois Auto Central, a dealer in the business of selling and servicing such refrigeration units, employed plaintiff as a me-

chanic. Defendant sent the trailer to Illinois Auto Central, under a manufacturer's warranty, for the repair of a possible freon leak in the refrigeration unit. On November 13, 1980, plaintiff suffered injuries when, in the process of separating the refrigeration unit from the trailer, the unit fell from the trailer, striking him.

The record further shows that plaintiff, in his original complaint filed on July 30, 1982, pleaded claims under the theories of negligence and products liability against defendant as the manufacturer of the trailer. On March 27, 1984, plaintiff received leave of court to file an amended complaint in which he corrected the erroneous characterization of defendant as the trailer manufacturer. Plaintiff's amended complaint contained one count under the theory of products liability, alleging that the refrigeration unit was unreasonably dangerous because it was not properly secured to the trailer and because it did not contain written instructions or warnings on the danger in removing it from the trailer.

Defendant, in its answer and affidavits by its vice president, Richard K. Carlson, stated that defendant sells trailers and does not manufacture them. Defendant further answered that at the time of plaintiff's accident it had not sold the trailer and still held title to it.

Defendant moved for summary judgment, contending that it manufactured neither the trailer nor the refrigeration unit and that it neither installed the refrigeration unit on the trailer nor made any changes in either the unit or the trailer. Defendant further contended that the trial court should grant it summary judgment because it neither sold the trailer nor created any risk, and because plaintiff was not an ultimate user or consumer of the product. On September 11, 1984, the trial court granted defendant summary judgment. Plaintiff appeals.

■■ When a plaintiff appeals from a trial court's order of summary judgment for a defendant, the only issue on appeal is whether "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005.) If the documents that the trial court considers show that there is a material issue as to any material fact, summary judgment should not be granted. In ruling on a motion for summary judgment, the trial court must construe the pleadings, depositions and affidavits in the light most favorable to the nonmoving party. If fair-minded persons could draw different conclusions from the evidence, the issues should be submitted to a jury to determine what conclusion seems most reason-

able. Conversely, when the evidence shows that no material issue of fact has been raised, the moving party is entitled to judgment as a matter of law. *Artis v. Fibre Metal Products* (1983), 115 Ill. App. 3d 228, 231-32, 450 N.E.2d 756, 758.

## I

■ Plaintiff claims that he properly pleaded sufficient facts to state a cause of action in products liability. An injured plaintiff may recover damages from a manufacturer under a products liability theory if he proves that his injury "resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control." *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 623, 210 N.E.2d 182, 188, adopting the Restatement (Second) of Torts sec. 402A (1965).

## A

■ Defendant contends that it cannot be liable in products liability where it did not manufacture the trailer with the alleged defect, where it created no risk. Defendant cites *Simpson v. General Motors Corp.* (1983), 118 Ill. App. 3d 479, 455 N.E.2d 137, *aff'd* (1985), 108 Ill. 2d 146, for the proposition that a manufacturer cannot delegate her duty to make a product safe to the dealer, buyer, or user of the product, and also for the proposition that an entity down the distribution chain does not have an identical duty to that of a manufacturer. 118 Ill. App. 3d 479, 484.

In *Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 454 N.E.2d 210, our supreme court stated:

"In a products liability action, all persons in the distributive chain are liable for injuries resulting from a defective product, including suppliers, distributors, wholesalers and retailers. [Citation.] Imposition of liability upon these parties is justified on the ground that their position in the marketing process enables them to exert pressure on the manufacturer to enhance the safety of the product. [Citation.] Regardless of the nature of the commercial transaction and even though he does not create the defect, a seller who puts a defective product into the stream of commerce may still be held strictly liable to an injured user. [Citation.]" 97 Ill. 2d 195, 206, 454 N.E.2d 210, 216-17.

Applying this principle, with its rationale, to the case at bar, we conclude that defendant's contention cannot stand. Although defend-

ant sells trailers and does not manufacture them, it is in the distributive chain and, therefore, is liable for injuries resulting from defects in its trailers. *Simpson v. General Motors Corp.* does state the propositions that a manufacturer's duty to make a safe product is nondelegable and that an entity down the distributive chain does not have an identical duty to that of a manufacturer. However, our supreme court reasoned that "the public policy concern is really who, between the injured user and the seller, should bear the initial loss. The seller is in a position to prevent a defective product from entering the stream of commerce. The seller may either adopt inspection procedures or influence the manufacturer to enhance the safety of the product. Moreover, the seller is generally better able to bear and distribute any loss resulting from injury caused by a defective product. [Citation.]" (*Crowe v. Public Building Com.* (1978), 74 Ill. 2d 10, 13-14, 383 N.E.2d 951, 952.) We hold that defendant can be liable for injuries resulting from the defective attachment of the refrigeration unit to the trailer.

## B

Defendant next contends that it cannot be liable in products liability where it has not put the trailer into the stream of commerce. Defendant argues that the term "stream of commerce" connotes some type of commercial transaction including a payment of money or profit. Since it had not sold the trailer and since plaintiff was repairing the refrigeration unit under a warranty, defendant argues that it had not put the trailer in the stream of commerce.

■■ ■ Defendant correctly cites *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465, where our supreme court stated that "[t]he doctrine of strict liability was not intended to encompass injuries resulting from a 'product' which is in an unmarketable state and which had not yet been released into the stream of commerce ***." (62 Ill. 2d 456, 465, 343 N.E.2d 465, 470.) While liability does not depend on whether there was an actual sales transaction, it is necessary that a defendant be in the business of placing the allegedly defective product into the stream of commerce. (*Keen v. Dominick's Finer Foods, Inc.* (1977), 49 Ill. App. 3d 480, 482, 364 N.E.2d 502, 504.) Courts have used the phrase "stream of commerce" to make the distinction between the one-time or casual seller to whom strict products liability does not apply and a defendant engaged in the business of selling products. To be in the stream of commerce does not require that the product be mass-produced or placed on the shelf at numerous locations. It is sufficient if the defendant is engaged in

the business of selling the product and markets it to a buyer for the buyer's use. *Boddie v. Litton Unit Handling Systems* (1983), 118 Ill. App. 3d 520, 530, 455 N.E.2d 142, 149.

While the transactions between the parties in the distribution system may not necessarily be seller and buyer, the transaction and the relationship of the parties should be a part of the distribution system for the product. There are many parties who conceivably have some relation with the manufacture and sale of the product, but their relationship is peripheral and not directly related to the distributive process. (*Harms v. Caterpillar Tractor Co.* (1980), 80 Ill. App. 3d 262, 264, 399 N.E.2d 722, 723.) In *Harms* and cases cited therein, we list examples of parties that might have some relation to a product but, although related to the general economic system, are outside of the manufacturing distributing system contemplated by products liability theories. 80 Ill. App. 3d 262, 264, 399 N.E.2d 722.

■ Defendant apparently contends that it "detoured" the trailer from the stream of commerce by not having sold it at the time of plaintiff's injury. Defendant also apparently contends that the trailer was "detoured" from the stream of commerce by the fact that plaintiff, an employee of the dealer that sold the trailer's refrigeration unit, was repairing the unit under the manufacturer's warranty. After applying the above principles to the case at bar, examining the acts of defendant and the relationship of plaintiff and defendant, we reject these contentions. Contrary to its assertions, defendant did not merely own the trailer in this case. Defendant is in the business of selling trailers and bought the allegedly defective trailer from the manufacturer for the purpose of resale for profit.

■ Further, we conclude that plaintiff was sufficiently related to the trailer's distribution system to recover damages from defendant under a products liability theory. Defendant bought the trailer for a profitable resale. Defendant admits that it sent the trailer to plaintiff to repair a refrigeration freon leak. A refrigeration trailer in such a condition would be unmarketable; with repairs, such a trailer would be marketable, enabling its seller to make a profit.

Defendant cites several cases where we held that defendants had not put their products in the stream of commerce. (*Hinojasa v. Automatic Elevator Co.* (1980), 92 Ill. App. 3d 351, 416 N.E.2d 45; *Maddan v. R.A. Cullinan & Son, Inc.* (1980), 88 Ill. App. 3d 1029, 411 N.E.2d 139; *Keen v. Dominick's Finer Foods, Inc.* (1977), 49 Ill. App. 3d 480, 364 N.E.2d 502.) We distinguish those cases from the instant case based on their facts. In *Maddan*, we held that a highway guardrail could never be a "product" under a products liability theory.

(*Maddan v. R.A. Cullinan & Son, Inc.* (1980), 88 Ill. App. 3d 1029, 1031, 411 N.E.2d 139.) In the instant case, both sides agree that a trailer is a product. In *Keen,* we held that one could not characterize a supermarket as putting a shopping cart into the stream of commerce because the supermarket was not sufficiently related to the cart's distribution system. (*Keen v. Dominick's Finer Foods, Inc.* (1977), 49 Ill. App. 3d 480, 482-83, 364 N.E.2d 502.) In *Hinojasa,* we held that one could not characterize a mere elevator installer as putting an elevator into the stream of commerce because the installer was not sufficiently related to the elevator's distribution system. (*Hinojasa v. Automatic Elevator Co.* (1980), 92 Ill. App. 3d 351, 353-54, 416 N.E.2d 45.) In the case at bar, we earlier held that defendant ordered its trailer repaired so that the trailer would be marketable, enabling defendant to profit on the trailer's sale. We hold that the allegedly defective trailer was in the stream of commerce at the time of plaintiff's injury.

## C

Defendant further contends that it cannot be liable in products liability where plaintiff was not the ultimate user of the trailer, and also where plaintiff was an expert mechanic rather than innocent, helpless, or unknowing.

■■ ■ These considerations are irrelevant. The Illinois Supreme Court explicitly rejected categorizations such as "user," "consumer," or "innocent bystander" in *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 310 N.E.2d 1. In that case, our supreme court held that the liability of a manufacturer encompasses only those persons to whom injury from a defective product may reasonably be foreseen and encompasses only those situations where the product is being used for the purpose for which it was intended or for which it is reasonably foreseeable that it may be used. (57 Ill. 2d 7, 11, 310 N.E.2d 1.) "Foreseeability" means that which is objectively reasonable to expect, not merely what might conceivably occur. (57 Ill. 2d 7, 12-13, 310 N.E.2d 1.) Further, the questions of foreseeability are ordinarily for a jury to resolve. *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 13, 310 N.E.2d 1; *Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 344, 247 N.E.2d 401, 403.

Contrary to defendant's assertions, we find our decision in *Court v. Grzelinski* (1977), 48 Ill. App. 3d 716, 363 N.E.2d 12, instructive on the issue. In *Court,* plaintiff was a fireman who received injuries while fighting an automobile fire. He sought damages from the automobile owner under negligence and damages from the manufacturer and retailer in products liability. The trial court granted the manufac-

turer's and retailer's motions to dismiss based on the Fireman's Rule: that a fireman may not recover damages for injuries received while performing his professional duties, unless defendant's negligent acts created an unusual risk not ordinarily present in fire fighting. On appeal, the manufacturer and retailer contended that the rule applied to actions in products liability as well as to actions in negligence. 48 Ill. App. 3d 716, 718-20, 363 N.E.2d 12.

We rejected the applicability of the Fireman's Rule to products liability actions and applied the foreseeability test of *Winnett v. Winnett* to the facts of the case. We reasoned that to preclude plaintiff from bringing an action in products liability because he is a fireman, where any other citizen could bring such an action, would contravene the public policy of products liability: to protect the public from the sale of defective and unsafe products that someone represents as being safe and suitable for their intended use. (*Court v. Grzelinski* (1977), 48 Ill. App. 3d 716, 721-22, 363 N.E.2d 12.) The Illinois Supreme Court agreed with this reasoning, holding that "to the extent a fireman is a person to whom injury from the product may reasonably be foreseen, he may recover in products liability, even though his injury was incurred while fighting a fire in the course of his employment." *Court v. Grzelinski* (1978), 72 Ill. 2d 141, 151, 379 N.E.2d 281, 285.

■ Defendant proposes categories of plaintiffs as was the case in *Court*. As in *Court*, we choose to apply the foreseeability test of *Winnett* to the facts of the instant case rather than to categorize and exclude plaintiff from products liability protection. We decline to deviate from *Winnett* and *Court* and conclude that foreseeability was an issue in the case at bar and that the issue should have been tried to a jury.

## D

■ Defendant lastly contends that it cannot be liable in products liability where there are no issues of fact. Defendant relies on the rule that well-alleged facts in an affidavit, where uncontradicted by a counteraffidavit, must be taken as true despite any contrary averments in an adverse party's pleadings that merely purport to establish issues of fact. (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500-01.) Defendant argues that since it filed an affidavit and since plaintiff did not file a counteraffidavit, then the facts stated in its affidavit must be taken as true; therefore, there are no issues of fact and summary judgment was appropriate.

We earlier held that foreseeability was an issue in this case and that the issue should have been tried to a jury. Defendant's affidavit

does not touch on the issue of foreseeability. We conclude, therefore, that defendant's affidavit does not alter our earlier holding.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

JIGANTI, P.J., and McMORROW, J., concur.