2022 IL App (1st) 210181

No. 1-21-0181

Filed February 16, 2022

Third Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| CHERYL JAROSZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| THE BUONA COMPANIES, LLC; FRANKFORT | ) | No. 17 L 12382 |
| VENTURES, LLC; MOBILE LOCK AND SAFE, INC.; | ) | |
| and BUONA BEEF, LLC, | ) | |
| | ) | |
| Defendants, | ) | Honorable |
| | ) | Israel A. Desierto |
| (Mobile Lock and Safe, Inc., Defendant-Appellee). | ) | Judge presiding. |

_____

JUSTICE BURKE delivered the judgment of the court, with opinion.
Presiding Justice Gordon and Justice McBride concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff Cheryl Jarosz tripped and fell outside a Buona Beef restaurant located in Frankfort, Illinois. The force of the fall rendered her temporarily unconscious, so she did not know exactly what caused her to fall. But a doorstop that had been installed for the Buona Beef restaurant by Mobile Lock and Safe, Inc. (Mobile Lock) was located where she fell. During the course of litigation, Mobile Lock moved for summary judgment arguing that, as merely the installer of the

doorstop for the property owner, it did not owe plaintiff a duty of care. The circuit court initially denied Mobile Lock's motion, but after reconsideration, it granted Mobile Lock summary judgment based on the company not owing plaintiff a duty of care.

¶ 2    Plaintiff now appeals the circuit court's grant of summary judgment in favor of Mobile Lock and contends that the court erred in granting summary judgment where Mobile Lock owed her a duty of care despite merely being the installer of the doorstop on behalf of the property owner. We agree with plaintiff that Mobile Lock owed her a duty of care, and for the reasons that follow, we reverse the circuit court's grant of summary judgment in Mobile Lock's favor and remand the matter for further proceedings.

¶ 3                           I. BACKGROUND

¶ 4    Frankfort Ventures, LLC (Frankfort Ventures), owned a property located in Frankfort out of which Buona Beef, LLC, as the tenant, operated a Buona Beef restaurant. Both Frankfort Ventures and Buona Beef, LLC, were related companies. So, too, was The Buona Companies, LLC, (the Buona Companies), apparently the management company for the Buona Beef enterprise (collectively, the Buona entities). All three companies were managed by Carlo Buonavolanto. In July 2017, the Buona entities hired Mobile Lock to install a doorstop on the sidewalk of the Buona Beef in Frankfort near the front entrance. Mobile Lock installed the doorstop, which protruded approximately three inches high off the ground.

¶ 5    On September 27, 2017, plaintiff arrived at the Buona Beef in Frankfort to meet her sister and another friend for lunch. As she walked from the parking lot to the entrance of the restaurant, she tripped and fell to the ground. The impact of the fall left her temporarily unconscious. After her fall, Fernando Del Carmen, the manager of the restaurant, completed a "customer accident/incident report" in which he described the incident. Del Carmen noted that a "guest

tripped with door floor stopper and fell by front door entrance." Believing that she tripped on the doorstop, plaintiff sued the Buona Companies for premises liability negligence. In her amended complaint, plaintiff added Frankfort Ventures and Mobile Lock as defendants. In April 2019, plaintiff filed her second amended complaint, the operative complaint for purposes of this appeal, and added Buona Beef, LLC, as the fourth defendant.

¶ 6    In count III of plaintiff's second amended complaint—the only count directed at Mobile Lock—she alleged that the Buona entities retained Mobile Lock to design, select, and install a doorstop at the north entrance of the Buona Beef location in Frankfort. According to plaintiff, prior to her arrival at the restaurant, an employee of Buona Beef placed an A-frame sign outside of the north entrance that advertised food sold inside. Plaintiff claimed that Mobile Lock had a duty to design, select, and install the doorstop in a reasonably safe location. Despite this duty, plaintiff asserted that Mobile Lock breached its duty by (1) selecting a doorstop that, based on its height and location, was a tripping hazard, (2) failing to warn of the doorstop's hazardous condition, and (3) failing to put the doorstop in a location that was reasonably safe for invitees such as herself. Plaintiff alleged that, as a proximate result of Mobile Lock's breach of duty, she tripped over the doorstop and sustained various injuries.

¶ 7    In response, Mobile Lock filed an answer and affirmative defenses. In its answer, Mobile Lock admitted that the Buona entities retained it to install a doorstop at the Buona Beef location in Frankfort. Mobile Lock further admitted that it had installed the doorstop at the north entrance of the restaurant. However, Mobile Lock either had insufficient knowledge or denied the remaining allegations in count III. In Mobile Lock's affirmative defenses, it alleged that plaintiff was negligent and careless in multiple manners and that her negligence and carelessness proximately

caused her own injuries. Plaintiff denied that she was negligent and that her alleged negligent acts or omissions were the proximate cause of her injuries.

¶ 8    During the course of litigation, various individuals were deposed, including plaintiff. In her deposition, she testified that she arrived to the Buona Beef in Frankfort around noon on September 27, 2017, and parked in the parking lot on the northeast side of the restaurant. Plaintiff, who was wearing "slip-on boat shoes" that did not have any laces and were made with rubber soles, noted that it was sunny outside, the concrete was dry, and she had no visibility issues. Plaintiff was carrying a purse but had nothing else in her hands. From the parking spot, plaintiff walked directly toward the entrance, which was located on the northeastern corner of the building. Between the parking lot and the entrance to the restaurant, there was what plaintiff estimated as five feet of flat sidewalk. Although plaintiff would not say there was "an obstruction" in her path, she did observe an A-frame sign that advertised food sold inside the restaurant. The sign was about three to four feet away from the building on the sidewalk in a northeast direction from the building's entrance.

¶ 9    As plaintiff continued walking toward the entrance, she safely walked up over the curb separating the parking lot and sidewalk, and then she walked to the left of the A-frame sign. Plaintiff kept her head up looking straight toward the entrance and noticed there was something written on the door of the restaurant. Plaintiff stated that nothing obstructed her view of the ground and nothing prevented her from looking down at the ground, but she could not remember if she looked down. When asked by Frankfort Ventures' attorney if she would have seen what was on the sidewalk had she looked down, such as the doorstop, plaintiff responded that "[i]t kind of blended in with the sidewalk, so I don't know." After Frankfort Ventures' attorney read plaintiff a statement she made to an insurance representative on October 3, 2017, plaintiff agreed that she did

not know what exactly caused her to fall and that she briefly lost consciousness after falling. However, plaintiff also told the insurance representative that, as she was going to open the door, there was a doorstop sticking up on the sidewalk that she must have tripped over. Plaintiff testified that she believed she fell because she tripped over the doorstop, although she acknowledged that she only remembered reaching for the door and regaining consciousness on the ground. Plaintiff added that, as she was reaching for the door, she was essentially where the doorstop was located.

¶ 10    Plaintiff stated that, after regaining consciousness following her fall, her feet were essentially in the location of the doorstop. Soon after, the manager of the Buona Beef restaurant came out and asked if she needed an ambulance, but she or her sister denied the assistance. Eventually, plaintiff's sister drove her to the hospital. As a result of the fall, plaintiff suffered a laceration to her head, a concussion, a radial head fracture, and tears of her right wrist tendons. These injuries resulted in plaintiff losing the full use of her right arm and hand, continuous pain, and two surgeries.

¶ 11    Plaintiff retained an expert witness, Albert Kerelis Jr., who was a licensed architect and property manager. After reviewing the materials of the case, he authored a written report in which he noted that the Village of Frankfort had adopted the 2006 International Property Maintenance Code (Code) (2006 International Property Maintenance Code, Int'l Code Council, Inc. (Oct. 2007), https://codes.iccsafe.org/content/IPMC2006 [https://perma.cc/55GA-JX56]), and one section of that Code stated that " '[a]ll sidewalks, walkways *** shall be kept in a proper state of repair, and maintained free from hazardous conditions.' " See 2006 International Property Maintenance Code § 302.3 (Oct. 2007). Kerelis concluded that the doorstop "was a tripping hazard in a foreseeable pedestrian walkway that violated the nationally recognized and applicable standards of care for safe walkways and was dangerous in a manner that caused [plaintiff's] fall and injury." Kerelis

further found that the doorstop "was dangerous because it was a low obstruction in the walkway that was not readily identifiable" and "[t]hose responsible should have known that a low impediment in the foreseeable walkway was dangerous and either eliminated the door stop or provided warnings to its presence." Additionally, Kerelis concluded that "the failure of those responsible to either eliminate the door stop or provide adequate and effective warnings to its presence violated the applicable standards of care for safe walkways and created a dangerous condition that caused [plaintiff] to trip, fall and be injured." As part of his report, Kerelis reviewed a deposition given by Carlo Buonavolanto, the manager of the Buona entities. In that deposition, according to Kerelis, Carlo Buonavolanto testified that he was "certain that someone in the Buona Companies would make a decision" as to where the doorstop should be located near the entrance of the Frankfort Buona Beef.[1]

¶ 12    After Kerelis authored his report, he was also deposed. He testified that, in part to prepare his report, he reviewed the applicable property maintenance code in the village of Frankfort. Because the installation of the doorstop occurred after the building had been built and the owners of the building had been granted a certificate of occupancy, Kerelis did not review the applicable building code in Frankfort in forming his opinions. However, Kerelis acknowledged that, to his knowledge, the condition of the sidewalk and property at the Buona Beef in Frankfort did not violate any provision of the applicable building code in Frankfort. Although Kerelis asserted that

---

[1]Although Carlo Buonavolanto gave a deposition in this case and that deposition was referenced in Kerelis' report, the transcript of Carlo Buonavolanto's actual deposition is not included in the record on appeal. When Mobile Lock pointed out this fact in its brief, plaintiff responded that such an assertion was a "misrepresentation" and was "a matter for this court's keen attention." However, when plaintiff attempted to highlight that Carlo Buonavolanto's deposition was, indeed, included in the record on appeal, she cited to Joseph Buonavolanto's deposition, not Carlo Buonavolanto's. Moreover, in the "Index to the Record on Appeal" in plaintiff's appendix of her brief, the deposition of Carlo Buonavolanto does not appear; only Joseph Buonavolanto's deposition appears.

the location of the doorstop violated the 2006 International Property Maintenance Code, he conceded that the Code did not specifically reference "door stops" and only referenced "hazardous conditions." 2006 International Property Maintenance Code § 302.3 (Oct. 2007).

¶ 13    Kerelis testified that the doorstop at issue was made of cast brass and aluminum with a black rubber stopper. Because the aluminum was on top of the cast brass, the color of the doorstop was silver. Kerelis noted that the aluminum of the doorstop would reflect the concrete around it, so it would not be "as conspicuous an item or readily discernible item as, say, something that's yellow or red," something "of that nature that we use to warn or mark people." As Kerelis discussed his review of plaintiff's deposition, he acknowledged that she did not look down as she was walking, but he observed that is not how people generally walk. He added that, based on his review of the scene, "[t]he door stop was not readily discernible." Kerelis also agreed that adhering to the property maintenance code is the responsibility of the building owner.

¶ 14    Further deposed in the case were employees of the Buona entities. Joseph Buonavolanto, a project manager for the Buona Companies, testified that his role within the company was to manage the build out and transformation of a building into a Buona Beef restaurant. In particular, he was the project manager for the Buona Beef location in Frankfort. The restaurant began being built in September 2016 and was completed in July 2017. At some point, Joseph noted there was an ongoing issue with the entrance doors blowing open and being damaged, so he hired Mobile Lock to reinforce the doors. As far as Joseph could recall, he called Mobile Lock and explained the issue but did not tell them how to fix the issue. And to Joseph's knowledge, neither he nor any other employee of the Buona entities played any role in determining where the doorstop would be located. Joseph did not believe that any Mobile Lock employees would rely on a store manager from a Buona Beef restaurant for input on how or where to install the doorstop. However, Joseph

acknowledged he was not present when the doorstop was installed, so he had no personal knowledge on any conversations between Mobile Lock and Buona Beef employees regarding the doorstop. Likewise, Joseph did not specifically recall any conversations he had with Mobile Lock employees as it related to the doorstop at the Frankfort Buona Beef, but he was confident he did not instruct them on how to install the doorstop at the restaurant. Following the opening of the Frankfort Buona Beef, the company opened additional Buona Beef locations. In these locations, the company utilized different mechanisms to solve the blowing-doors issue, such as "hold-stop arm with a spring cushion" and different door hinges. In fact, at the new locations, the hold-stop arm doorstop was "spec'd from the jump."

¶ 15    Jorge Valdez, the district manager for all new Buona Beef restaurants, testified that his role with the Buona entities was to stay at a new location for up to three months and, once the restaurant was running smoothly, leave to help open another location. Valdez did not believe he was at the Frankfort Buona Beef when plaintiff tripped and fell, but he was present on the day the doorstop was installed at that location in mid-July 2017. Valdez recalled that, at some point either shortly before or shortly after the Frankfort Buona Beef opened, there was a problem with the doors. When there was wind, the doors would get blown open, which would risk the doors being damaged. Because of this, Valdez called Joseph and alerted him to the problem. On the day Mobile Lock's employees came, Valdez did not give the employees any instruction on where to put the doorstop except to say which door needed a doorstop. Rather, Valdez relied on Mobile Lock's employees to install the doorstop in a correct and safe location. After the employees of Mobile Lock installed the doorstop, Valdez signed the work order invoice. Although he observed they had installed the doorstop, he did not have an opinion on if they had installed the doorstop in a safe location.

¶ 16    At some point during the circuit court proceedings, plaintiff reached a settlement with the Buona entities. As such, on July 17, 2020, the Buona entities filed a joint motion requesting the circuit court find their settlement was negotiated in good faith and dismiss them as defendants with prejudice. That same day, the circuit court entered an agreed order finding the settlement was negotiated in good faith and dismissing the Buona entities with prejudice. As such, plaintiff's litigation remained pending against only Mobile Lock.

¶ 17    In late July 2020, Mobile Lock filed a motion for summary judgment and contended that it did not owe plaintiff a duty because compliance with the applicable property maintenance code was the responsibility of the property owner, not itself as the installer of the doorstop. Additionally, Mobile Lock argued that its conduct was not the proximate cause of plaintiff's injuries. Two months later, the circuit court denied Mobile Lock's motion. In ruling as such, the court found that Mobile Lock owed plaintiff a duty and that there were genuine issues of material fact on the issue of proximate causation.

¶ 18    Thereafter, Mobile Lock moved the circuit court to reconsider its ruling and argued that, under *Hunt v. Blasius*, 74 Ill. 2d 203 (1978), the completed and accepted work doctrine applied to the facts of the case. As such, because Mobile Lock completed the work of installing the doorstop and the owner of the property accepted that work, it had no duty to third parties for injuries suffered as a result of that work. In December 2020, following briefing, the circuit court agreed that it erred in its previous application of the existing law as to whether Mobile Lock owed plaintiff a duty. The court noted that it, in part, should have given more consideration to *Hunt*, and, thus, it should have granted summary judgment to Mobile Lock. Consequently, the court granted Mobile Lock's motion to reconsider, vacated its order denying Mobile Lock's motion for summary judgment and entered summary judgment in favor of Mobile Lock and against plaintiff.

¶ 19    Plaintiff then filed her own motion to reconsider, which the circuit court denied. Plaintiff subsequently appealed.

¶ 20                                    II. ANALYSIS

¶ 21    Plaintiff contends that the circuit court improperly granted Mobile Lock summary judgment. First, she argues that Mobile Lock's completed and accepted work doctrine defense was not valid. Second, plaintiff argues that Mobile Lock owed her a duty of care as a matter of law. Lastly, she posits that there were genuine issues of material fact on the issues of breach of duty and proximate causation.

¶ 22    Summary judgment is appropriate where the pleadings, depositions, affidavits, and admissions on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016); *Carney v. Union Pacific R.R. Co.*, 2016 IL 118984, ¶ 25. In determining whether a genuine issue of material fact exists, the court strictly construes the pleadings, depositions, and affidavits against the moving party and liberally in favor of the nonmoving party. *Carney*, 2016 IL 118984, ¶ 25. A genuine issue of material fact exists "where the material facts are disputed or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49. We review summary judgment rulings *de novo*. *Carney*, 2016 IL 118984, ¶ 25.

¶ 23                        A. Completed and Accepted Work Doctrine

¶ 24    In Mobile Lock's motion to reconsider, it relied on *Hunt*, 74 Ill. 2d 203, and argued that the completed and accepted work doctrine applied to the facts of the case. In granting Mobile Lock's motion to reconsider, vacating the order denying Mobile Lock's motion for summary judgment and entering summary judgment in favor of Mobile Lock and against plaintiff, the circuit

court did not explicitly state that it had granted summary judgment based on the completed and accepted work doctrine. However, the court did agree that it failed to give sufficient consideration to *Hunt*, a case from our supreme court that discussed the completed and accepted work doctrine.

¶ 25 Long ago, the general rule in Illinois law was that

> "where an independent contractor is employed to construct and install any given work or instrumentality and has done the same and it has been accepted by the employer and the contractor discharged, he is no longer liable to third persons for injuries received as a result of defective construction or installation." (Internal quotation marks omitted.) *Colbert v. Holland Furnace Co.*, 333 Ill. 78, 81 (1928).

The rule was premised upon the doctrine of privity of contract such that without privity, an injured third party could not hold the contractor liable for his or her injuries. *Suvada v. White Motor Co.*, 32 Ill. 2d 612, 616-17 (1965), *overruled on other grounds by Frazer v. A.F. Munsterman, Inc.*, 123 Ill. 2d 245 (1988). Over the years, several exceptions to the general rule developed, resulting in independent contractors being potentially liable to third parties for their injuries. See *Paul Harris Furniture Co. v. Morse*, 10 Ill. 2d 28, 40 (1956) (noting the various exceptions).

¶ 26 Eventually, the exceptions to the general rule swallowed the rule itself, and the general rule of nonliability ceased to exist. *Suvada*, 32 Ill. 2d at 616-17. As such, the new general rule became "that a manufacturer may be liable for injuries to a person not in privity with him and that such liability is governed by the same principles governing any action for negligence." *Id.* at 617. Though the *Suvada* case involved a manufacturer, our supreme court applied the principle to product sellers, suppliers, assemblers, and contractors, and it rejected the notion that lack of privity of contract was a blanket defense. *Id.* The new general rule comported with the underlying purpose of tort law, which "is to provide for public safety through deterrence of negligent designers and

builders." *Johnson v. Equipment Specialists, Inc.*, 58 Ill. App. 3d 133, 141 (1978). And this purpose could not be accomplished if such people were "insulated from liability simply by the act of delivery to the contractee." *Id.*

¶ 27     Under this backdrop of case law, our supreme court issued its decision in *Hunt*, 74 Ill. 2d 203. In that case, the State of Illinois hired Fosco Fabricators (Fosco) to construct and install a highway exit sign in strict conformity with standards set by the State of Illinois. *Id.* at 206. Fosco followed those specifications, and the State of Illinois approved and accepted the work performed by Fosco. *Id.* More than three years later, a vehicle veered off the highway and collided with the post of the highway exit sign, resulting in the death of two of the vehicle's occupants and injuries to three others. *Id.* A lawsuit was filed on behalf of all five occupants against multiple parties, including Fosco, who was sued for negligence and strict liability. *Id.* Eventually, Fosco became the only defendant left in the litigation, and it moved for summary judgment. *Id.* In support of its motion, Fosco submitted an uncontroverted affidavit establishing that it designed, constructed, and installed the sign and post in strict conformity with the specifications required by the State of Illinois. *Id.* at 206-07. The trial court granted Fosco's motion, finding that, because Fosco was an independent contractor, it was relieved from liability to any third parties once the State of Illinois approved and accepted the work it performed. *Id.* at 207. The appellate court affirmed, and the case then reached our supreme court. *Id.*

¶ 28     Our supreme court reviewed the history of independent contractor liability to third parties for work completed and accepted by the contracting party before ultimately observing that the old "general rule of nonliability ha[d] been discarded." *Id.* at 209. As such, our supreme court asserted that it had to examine the plaintiffs' negligence claim under the traditional rules of liability for such actions, namely analyzing whether there was a duty, a breach of that duty, and proximate

causation of injury from the breach. *Id.* In conducting its analysis, the court observed that "[a]n independent contractor owes no duty to third persons to judge the plans, specifications or instructions which he has merely contracted to follow." *Id.* As such, if the contractor performs the specifications provided to it "carefully," it "is justified in relying upon the adequacy of the specifications unless they are so obviously dangerous that no competent contractor would follow them." *Id.* Turning to the plaintiffs' complaint, the court highlighted that they failed to allege the specifications supplied to Fosco by the State of Illinois were so flawed that Fosco should have had notice that its product would be so dangerous that it would likely cause injury. *Id.* at 210. The court further observed that the plaintiffs failed to set forth any facts from which the court could infer that the State of Illinois's specifications "were so glaringly dangerous that Fosco should have refrained from complying with the specifications." *Id.* Because the plaintiffs failed to make such allegations, the court had no basis to find that Fosco could be held liable for negligence. *Id.* The court went on to find further flaws with the plaintiffs' strict liability claim and ultimately affirmed the trial court's grant of summary judgment. *Id.* at 212.

¶ 29    Turning back to the present case, it is unclear on exactly what basis the circuit court relied on *Hunt*, as the court did not explicitly state the basis in its remarks. Regardless, because we review the court's summary judgment ruling *de novo* (*Carney*, 2016 IL 118984, ¶ 25), we review only the court's ultimate judgment, not its reasoning in support of that judgment. See *Makowski v. City of Naperville*, 249 Ill. App. 3d 110, 115 (1993). Moreover, we may affirm the circuit court's grant of summary judgment based on any basis supported by the record. *Id.* That is to say, the court's precise reasoning in granting summary judgment to Mobile Lock is immaterial for purposes of our review.

¶ 30    Nevertheless, we find it is important to highlight that, in Illinois, the completed and accepted work doctrine no longer is determinative of the question of liability. See *McMahon v. Richard Gorazd, Inc.*, 135 Ill. App. 3d 211, 222 (1985) (asserting that "the accepted work doctrine is no longer determinative of the question of liability in Illinois"). To be sure,

> "[a] contractor 'who on behalf of the possessor of land erects a structure or creates any
> other condition' on the possessor's land is subject to liability to invitees
>
> > 'for physical harm caused to them by the dangerous character of the structure or
> > condition after [the contractor's] work has been accepted by the possessor, under
> > the same rules as those determining the liability of one who as manufacturer or
> > independent contractor makes a chattel for the use of others.' " *Zahumensky v.
> > Chicago White Sox, Ltd.*, 2019 IL App (1st) 172878, ¶ 50 (quoting Restatement
> > (Second) of Torts § 385 (1965)).

To this end, to determine the question of liability of a contractor to a third party, the traditional principles of negligence govern. See *Hunt*, 74 Ill. 2d at 209; *McMahon*, 135 Ill. App. 3d at 222.

¶ 31                      B. Traditional Principles of Negligence

¶ 32    Turning to the traditional principles of negligence, in order to prove that Mobile Lock was negligent, plaintiff had to prove that Mobile Lock owed her a duty of care and breached that duty and that the breach proximately caused her injuries. *Monson v. City of Danville*, 2018 IL 122486, ¶ 23.

¶ 33                                    1. Duty

¶ 34    In this case, the most contested element was whether Mobile Lock owed plaintiff a duty, which is a question of law for the court to determine. *Bruns v. City of Centralia*, 2014 IL 116998,

¶ 13. If the defendant does not owe the plaintiff a duty, she cannot recover in her negligence claim. *Bell v. Hutsell*, 2011 IL 110724, ¶ 11. In Illinois,

> " 'every person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons.' " *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 19 (quoting *Widlowski v. Durkee Foods*, 138 Ill. 2d 369, 373 (1990)).

To this end, if an individual's conduct "creates a foreseeable risk of injury, the individual has a duty to protect others from such injury." *Bogenberger v. Pi Kappa Alpha Corp.*, 2018 IL 120951, ¶ 22. To determine whether a duty exists, the critical question is whether the defendant and the plaintiff "stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Id.* To answer this question, we utilize four factors: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Bruns*, 2014 IL 116998, ¶ 14.

¶ 35    Before addressing the four duty factors, we reiterate that, in *Hunt*, 74 Ill. 2d at 209, our supreme court stated that "[a]n independent contractor owes no duty to third persons to judge the plans, specifications or instructions which he has merely contracted to follow." *Id.* And thus, "[i]f the contractor carefully carries out the specifications provided him, he is justified in relying upon the adequacy of the specifications unless they are so obviously dangerous that no competent contractor would follow them." *Id.* In *Hunt*, the defendant provided an uncontroverted affidavit establishing that the highway exit "sign and supporting posts were designed, constructed and

installed by [the defendant] in strict conformity to specifications mandated by the State of Illinois." *Id.* at 206.

¶ 36   In this case, however, there is not uncontroverted evidence that Mobile Lock selected and installed the doorstop in strict conformity to specifications mandated by the Buona entities. Notably, in the deposition of Jorge Valdez, the district manager for all Buona Beef restaurants who signed the work order invoice after Mobile Lock completed the installation of the doorstop, he testified that he did not give the Mobile Lock employees any instructions on where to put the doorstop except to say which door needed a doorstop. Rather, according to Valdez, he relied on Mobile Lock's employees to install the doorstop in a proper and safe location. Similarly, in the deposition of Joseph Buonavolanto, a project manager with the Buona entities, he testified that he called Mobile Lock, informed the company of the door issue, but did not tell them how to fix the issue. Although Joseph was not present when Mobile Lock installed the doorstop, to his knowledge, neither he nor any other employee with the Buona entities played any role in determining where the doorstop would be located. The testimony of Valdez and Joseph is contradictory to the purported deposition testimony of Carlo Buonavolanto, the manager of the Buona entities, as discussed in Kerelis's report. In that report, Kerelis observed that Carlo was "certain that someone in the Buona Companies would make a decision" as to the location of the doorstop. Because there is no uncontroverted evidence that Mobile Lock selected and installed the doorstop in strict conformity to specifications mandated by the Buona entities, Mobile Lack cannot rely on the defense discussed in *Hunt* for contractors who merely follow plans, specifications, or instructions for which they were contracted. As such, we must utilize the four duty factors to determine whether Mobile Lock owed plaintiff a duty. See *Bruns*, 2014 IL 116998, ¶ 14.

¶ 37    First, with regard to the reasonable foreseeability of injury, the concept of foreseeability is limited, and to be foreseeable, something must be reasonable to expect objectively. *Id.* ¶ 33. The fact "[t]hat something 'might conceivably occur,' does not make it foreseeable." *Id.* (quoting *Hills v. Bridgeview Little League Ass'n*, 195 Ill. 2d 210, 238 (2000)). We do not consider the foreseeability of an accident in hindsight but rather "what was apparent to the defendant at the time of his now complained of conduct." *Cunis v. Brennan*, 56 Ill. 2d 372, 376 (1974). Here, the approximately three-inch-high doorstop protruded out from a concrete walkway near the entrance to the Buona Beef restaurant. Given the location and type of establishment, one would expect heavy foot traffic in the area where Mobile Lock installed the doorstop. Common experience shows that tripping over objects and even oneself is extraordinarily common in everyday life and, given the heavy foot traffic in the area where Mobile Lock installed the doorstop, tripping and falling is reasonably foreseeable.

¶ 38    The fact there was a property maintenance code mandating the condition of the walkway on the Buona Beef premises only buttresses this conclusion. As Kerelis observed in his deposition as well as in his expert report, on the date of plaintiff's fall, the Village of Frankfort had adopted the 2006 International Property Maintenance Code. See Building Code History, Vill. Of Frankfort, https://www.frankfortil.org/government/departments/permits___inspections/building_code_histo ry.php (last visited Feb. 9, 2022) [https://perma.cc/T7BU-KS6V] (stating that, from June 2009 until May 2018, the village had adopted the 2006 International Property Maintenance Code). Section 302.3 of the 2006 International Property Maintenance Code stated that "[a]ll sidewalks [and] walkways *** shall be kept in a proper state of repair, and maintained free from hazardous conditions." 2006 International Property Maintenance Code § 302.3 (Oct. 2007).. The existence of such a property maintenance code demonstrates a recognition that injuries from people tripping

and falling on objects on a walkway is reasonably foreseeable. See *Bogenberger*, 2018 IL 120951, ¶ 46 (observing that "[t]he existence of hazing statutes across the country *** indicates that injury due to hazing is reasonably foreseeable"). In other words, tripping and falling is not some bizarre, freakish, or fantastic event. See *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 31 ("In deciding reasonable foreseeability, we note that an injury is not reasonably foreseeable where it results from freakish, bizarre, or fantastic circumstances."). Rather, tripping and falling is common, and to prevent such accidents, areas where people frequently walk should be free from hazardous conditions. And for the same reasons, the likelihood of an injury was high. See *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 304 (2000) (noting that "the same reason" in determining whether an injury was reasonably foreseeable applied to the determination of the likelihood of an injury); *Grabinski v. Forest Preserve District of Cook County*, 2020 IL App (1st) 191267, ¶ 21 (noting that "the same reasons" in determining whether an injury was reasonably foreseeable applied to the determination of the likelihood of an injury).

¶ 39    Turning to the third factor—the magnitude of the burden of guarding against the injury—Mobile Lock is correct that manufacturers and installers have no duty to design or install products that are immune from all possible accidents. See *Pommier v. Jungheinrich Lift Truck Corp.*, 2018 IL App (3d) 170116, ¶ 34. However, that does not mean that no duty should ever be placed upon such contractors, including Mobile Lock in this case. During the deposition of Joseph Buonavolanto, a project manager with the Buona entities, he testified that they solved the issue of the blowing doors at other Buona Beef locations by utilizing different mechanisms, such as a "hold-stop arm with a spring cushion" and different door hinges. Clearly, there were and are options other than using doorstops at ground level. Requiring a door contractor to select an

apparatus to prevent a door from blowing open and causing damage to that door, which takes into consideration the circumstances of where that door is located, such as the prevalence of foot traffic in the area, does not impose an undue burden on the part of the contractor, as assuredly such considerations are already a part of determining the proper apparatus. As such, the magnitude of the burden of guarding against the injury is not great.

¶ 40    Lastly, the consequences of placing that burden on the defendant are not great because, as noted with the third factor, a door contractor should already be considering a multitude of safety factors when determining how to solve an issue with respect to a door. Mobile Lock, however, asserts that, at the time of installation, it could not have known that the Buona Beef restaurant would write on its door and place exterior signage near the doorstop. These facts do not obviate Mobile Lock from having a duty of care but rather touch upon the proximate cause element. See *Atchley v. University of Chicago Medical Center*, 2016 IL App (1st) 152481, ¶ 45 ("Proximate cause is defined as a cause that, in the ordinary course of events produced the plaintiff's injury, but a cause need not be the only or last cause; rather, the combination of multiple causes may result in the injury."). Furthermore, Mobile Lock posits that requiring an installer to complete its installation in such a way that prevents all possible accidents is inherently unreasonable. That argument misses the point in a duty analysis, which only concerns whether Mobile Lock owed plaintiff a duty of care. Mobile Lock's argument about an accident-free installation is more appropriately directed at the breach-of-duty and proximate cause elements. See *id.*

¶ 41    In sum, the four factors that guide the duty analysis demonstrate that Mobile Lock stood in such a relationship to plaintiff that the law imposed upon it an obligation of reasonable conduct for the benefit of a business invitee, such as plaintiff. *Bogenberger*, 2018 IL 120951, ¶ 22. Consequently, Mobile Lock owed plaintiff a duty of care.

¶ 42                          2. Breach of Duty and Proximate Causation

¶ 43    Although we have found that Mobile Lock owed plaintiff a duty of care, this is only one of the three elements in a negligence cause of action. See *Monson*, 2018 IL 122486, ¶ 23. Indeed, plaintiff will still have to prove that Mobile Lock breached its duty of care and that Mobile Lock's breach was a proximate cause of her injuries. *Id.* Concerning the breach element, it is generally a question of fact for the trier of fact. *Thompson v. Gordon*, 241 Ill. 2d 428, 439 (2011). And to this end, Mobile Lock does not contest that summary judgment was proper based on the breach-of-duty element, a tacit concession that, if a duty of care existed, the question of whether that duty was breached was for the trier of fact to resolve.

¶ 44    Concerning proximate causation, it has two components: cause in fact and legal cause. *Turcios v. The DeBruler Co.*, 2015 IL 117962, ¶ 23. Cause in fact examines the reasonable certainty that the defendant's conduct caused the injury. *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455 (1992). There may be more than one proximate cause of an injury (*Rivera v. Garcia*, 401 Ill. App. 3d 602, 611, (2010)), and that cause "need not be the only, last or nearest cause; it is sufficient if it occurs with some other cause acting at the same time, which in combination with it, causes injury." *Leone v. City of Chicago*, 235 Ill. App. 3d 595, 603 (1992). On the other hand, legal cause requires an analysis of foreseeability and "whether the injury is the type of injury that a reasonable person would see as a 'likely result' of his or her conduct, or whether the injury is so 'highly extraordinary' that imposing liability is not justified." *Turcios*, 2015 IL 117962, ¶ 24 (quoting *Lee*, 152 Ill. 2d at 456). Stated another way, "legal cause[ ] is established only if the defendant's conduct is so closely tied to the plaintiff's injury that he should be held legally responsible for it." (Internal quotation marks omitted.) *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 395 (2004). Generally, the issue of proximate causation is a question of fact for

the trier of fact, but it may become "a question of law when the facts alleged indicate that a party would never be entitled to recover." *Berke v. Manilow*, 2016 IL App (1st) 150397, ¶ 32.

¶ 45     Mobile Lock's chief argument as to why plaintiff could never prove proximate cause is that she does not know why she fell. As such, according to Mobile Lock, plaintiff cannot show that its conduct was a cause in fact of her injuries. A plaintiff need not prove a defendant's negligence using direct evidence, as she can prove her case using circumstantial evidence. *Mort v. Walter*, 98 Ill. 2d 391, 396 (1983). "Circumstantial evidence is the proof of facts and circumstances from which a fact finder may infer other connected facts that usually and reasonably follow, according to the common experience of mankind." *Nowak v. Coghill*, 296 Ill. App. 3d 886, 896 (1998). "Even where the circumstances support more than one logical conclusion, circumstantial evidence is sufficient to establish proximate cause to overcome a motion for summary judgment as long as the inference in question may reasonably be drawn from the evidence." *Id.*

¶ 46     While it is true that, in plaintiff's deposition, she acknowledged not knowing precisely why she fell, reasonable people can draw different inferences based on the undisputed facts of the case. In her deposition, plaintiff testified to her actions that led to her fall, beginning with her walking from the parking lot toward the Buona Beef entrance. As she neared the entrance door, she walked around an A-frame sign located on the ground and then noticed something written on the door. Although plaintiff did not look directly down at the ground, she tripped and fell as she reached for the entrance door and temporarily lost consciousness. When she regained consciousness after her fall, she was located directly where the doorstop installed by Mobile Lock was located, leading her to believe that she tripped over the doorstop. No one disputes that plaintiff tripped and fell, and no one disputes that she fell near the location of the doorstop installed by Mobile Lock. Given the circumstances and viewing the evidence in the light most favorable to plaintiff, one could

reasonably infer that she tripped over the doorstop and fell to the ground. As such, it is reasonable to infer that the type and location of doorstop installed by Mobile Lock was a proximate cause of plaintiff's fall. Moreover, after plaintiff fell, Fernando Del Carmen, the manager of the Frankfort Buona Beef, completed a "customer accident/incident report" in which he described the incident as: "[G]uest tripped with door floor stopper and fell by front door entrance." See *Poltrock v. Chicago & North Western Transportation Co.*, 151 Ill. App. 3d 250, 254-55 (1986) (holding that accident reports sought to be admitted against the party who prepared them are admissible evidence as business records). While Del Carmen did not observe the accident, this evidence also supports plaintiff's theory that she tripped on the doorstop. Consequently, plaintiff presented sufficient circumstantial evidence on the issue of proximate causation to overcome Mobile Lock's motion for summary judgment.

¶ 47    Because we have found that Mobile Lock owed plaintiff a duty and that summary judgment is not appropriate at this stage on the elements of breach of duty and proximate causation, we reverse the circuit court's grant of summary judgment in favor of Mobile Lock and remand the matter for further proceedings.

¶ 48                                    III. CONCLUSION

¶ 49    For the foregoing reasons, we reverse the judgment of the circuit court and remand the matter for further proceedings.

¶ 50    Reversed and remanded.

_____

**No. 1-21-0181**

_____

| | |
|---|---|
| **Cite as:** | *Jarosz v. Buona Cos.*, 2022 IL App (1st) 210181 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-L-12382; the Hon. Israel A. Desierto, Judge, presiding. |
| **Attorneys for Appellant:** | Robert J. Napleton and Brion W. Doherty, of Motherway & Napleton, of Chicago, and Lynn D. Dowd and Jennifer L. Barron, of Law Offices of Lynn D. Dowd, of Naperville, for appellant. |
| **Attorneys for Appellee:** | Ryan Showalter, of Urgo & Nugent, LLC, of Chicago, for appellee. |